No. 22686.

CARL COERBER, D/B/A CARL'S TOWING SERVICE, AND CHARLES COERBER *v.* EDWARD L. RATH AND JUANITA J. RATH.

(435 P.2d 228)

Decided December 11, 1967

MARCUS WERTHER, for plaintiffs in error.

WILLIAM J. HEWITT, for defendants in error.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

THIS matter is here on writ of error whereby the defendants below (Coerbers) are seeking to reverse the trial court's refusal to set aside a default judgment entered August 19, 1966, in favor of the plaintiffs below (Raths).

The trial court was confronted with a most unusual, shameful and difficult situation, as will be seen from

a development of the facts. Hopefully, it is one that will never be repeated.

The plaintiffs' claims arose out of the alleged tortious conduct of the defendant Charles Coerber, an employee of defendant Carl Coerber, while in the act of repossessing the plaintiffs' automobile, as agent for Associates Discount Corporation, because of a default in the terms of a chattel mortgage-note. Associates Discount is a defendant in the action, but not a party to the proceedings in this court. Plaintiffs' claim against Associates Discount is at issue awaiting trial. The issues were drawn between the plaintiffs and the Coerbers, also. As a matter of fact, on the day prior to the entry of the default judgment the plaintiffs filed a demand for a jury trial, copies of which were mailed to the defendants and their attorney. Previously, on February 23, 1966, the plaintiffs filed a certificate of readiness for trial.

The default (and judgment) here under consideration is the second default entered against the Coerbers. The initial default was vacated and an answer and counterclaim filed. However, the answer and counterclaim were stricken for failure of the defendants to answer certain interrogatories submitted by the plaintiffs. The order striking these pleadings constituted a part of the default judgment, the vacation of which the trial court denied. It is the judgment denying the motion to vacate the default judgment which is under attack.

The precipitant which is responsible for our immediate interest in this case resulted from the trial court's finding on entering the default judgment that the defendant Charles Coerber, in committing the tort alleged in the complaint, was guilty of malice, and negligence consisting of a reckless or wilful disregard of the rights and safety of the plaintiff Juanita J. Rath, and that the plaintiff Juanita J. Rath have execution against the body of the defendant, Charles Coerber, by having him committed to the jail of the City and

County of Denver for a period of six months, unless the defendant pay the judgment in full.

The defendant Charles Coerber spent twenty-one days in jail before the court stayed the execution of the body judgment and released him from jail. Execution against the property of Carl Coerber has resulted in the sale of seven trucks. Several garnishments have been served upon employers of Charles Coerber. The Coerbers' situation is desperate. All of this has transpired without a trial on the merits of the controversy.

There have been numerous other motions, applications, and orders relating to the execution and stay of the judgment, but, because of the basis on which we are disposing of the matter, we do not deem it necessary to detail them.

We are confronted with the problem of determining whether the court properly exercised its discretion in refusing to set aside the default judgment and allowing the matter to be tried on its merits, or whether it abused its discretion under the unusual circumstances of this case.

The default judgment, entered on August 19, 1966, was grounded solely upon the failure of the defendants to answer interrogatories which were filed on December 31, 1965, and served on defendants' original attorney. That the interrogatories were unanswered is not in dispute. Wright J. Morgan, Jr., the second attorney for defendants, at the hearing on the motion to vacate the default judgment, was unable to give a plausible explanation for his failure, over an eight month period, to discharge his duties as a lawyer and for his complete disregard· for the interests of his clients. For example, his callous disregard of his obligation to his clients is evidenced by his own admission that upon receipt of an envelope from the division of the court handling the Coerber case he placed it in a desk drawer, rather than open it. Several days later he opened the envelope, found the contents to be the default judgment,

read it, but did not bother to inform the Coerbers of the judgment. This is not to say that Coerbers did not learn of the entry of the judgment. Within two weeks Charles Coerber was arrested and committed to jail under a writ of execution issued on the body judgment. This was the subtle manner in which both de°endants were apprised of the default judgment.

At this point, lawyer number three entered the case on behalf of the Coerbers and filed the motion to vacate and set aside the default judgment which is here under scrutiny. A recitation of a few additional facts developed at that hearing, together with those already noted, will provide adequate background for a discussion of the central question here: Did the trial court abuse its discretion in denying the motion to vacate the default judgment?

At one point, Mrs. Carl Coerber, wife of one defendant and stepmother of the other, testified that it was the practice in their home for her to open all the mail addressed to either defendant, discuss the contents with the defendants, if indicated, and take whatever action their decision suggested. She did that with the one or two notices which were admittedly received at the defendants' home, by communicating with Mr. Morgan. At one point in her testimony she explained not only her actions in connection with the interrogatories and the notice which she received, but also the basis for the confidence which the defendants had placed in Mr. Morgan, when she said:

"And Mr. Morgan went on to say, 'Don't worry about this.' He said, 'I will go to court to protect your interest if judgment should be awarded higher than covered by Associates Discount Incorporated Company.' And at the time I had no idea what interrogatories and pleadings were * * *.

"And he said that if he needed anything he would get in touch with us * * *.

"I contacted Mr. Morgan after that. I don't remember

how soon after that, just to ask him if he had gotten these papers [the interrogatories]. And he said that he had. That was the extent of my conversation with Mr. Morgan. And I, of course, assumed he was taking care of it."

Mr. Kenneth Wormwood, attorney for Associates Discount Corporation, a codefendant, testified under subpoena at the hearing to vacate the default judgment. His testimony shows that he sent a notice to Mr. Morgan on June 6, 1966, that he was going to take the deposition of the plaintiffs on June 23, 1966. Plaintiffs' attorney had a conflict and, as a result, agreed with Mr. Wormwood on a subsequent date. Mr. Wormwood then confirmed a new date by a letter to plaintiffs' attorney and sent a copy thereof to Mr. Morgan. Although it was of prime importance to his clients, Mr. Morgan did not bother to attend the taking of the deposition of the plaintiffs. Also, the deposition of another witness was taken, of which Mr. Morgan had notice, which he likewise ignored.

On cross-examination Mr. Wormwood, in answer to a question as to his conversations and communications with Mr. Morgan, testified, in effect, that he telephoned Mr. Morgan on July 21, 1965, suggesting a conference between the Coerbers, a representative of Associates Discount, Mr. Morgan and himself. This was confirmed by a letter to Mr. Morgan. He heard nothing from Morgan and so, on August 11, 1965, he attempted to reach him by telephone. He testified that he wrote Mr. Morgan advising him that he had called several times and could not reach him and asked Mr. Morgan to arrange the conference at the earliest possible date. Mr. Wormwood: "I wrote him on November 4, 1965, telling him I had not heard from him in reply to my other two letters and would he please contact us regarding the situation."

Further testifying, Mr. Wormwood stated: "On November 15, '65, I saw Mr. Morgan in the court house

here, and I guess he stopped me as I walked down the hall and he said he received my letters; he apo₁ogized and said he would call me the following week for arrangement of such a conference. I heard nothing from him."

Further: "I again saw him — I think I saw him once or twice but I have a note in my file that on February 11, '66, I contacted Mr. Morgan who stated he was having a conference with his clients on Sunday, and would call me the next week. On February 23rd, '66, I wrote advising that we hadn't heard from him since he was supposed to have had that conference and could we please get together. I received no reply from Mr. Morgan to that."

Concluding, Mr. Wormwood testified: "From there on, I decided I had just better go on my merry way with my own clients and made no effort to have any contact with Mr. Morgan and his clients."

There is more, but this is sufficient to indicate the situation with which the trial court was dealing. It should be noted in passing that the hearing to vacate the original default was heard and ruled upon by one judge (Judge McNamara); the hearing on the motion to compel answers to the interrogatories was heard and ruled upon by a second judge (Judge Horan), and the order from which the appeal has been taken was heard by still another judge (Judge Ott).

As pointed out above, the defendants' difficulties in this lawsuit began with the entry of the first default. That default was vacated and simultaneously the defendants filed an answer and counterclaim, to which the plaintiffs filed a reply. The case was at issue on the merits.

On December 31, 1965, plaintiffs filed a reply, certificate of readiness and request for a pre-trial conference. All of these were filed simultaneously with the written interrogatories under R.C.P. Colo. 33. On May 31, 1966, answers not having been filed to the inter-

rogatories, plaintiffs moved for an order compelling the defendants to answer the interrogatories. The motion and the notice for setting a hearing on the motion were served on Coerbers' first lawyer. Then a few days later a letter was sent by plaintiffs' attorney to the Coerbers, with a copy to their first attorney, advising them of the setting on June 16, 1966, of the plaintiffs' motion for an order compelling answers to the interrogatories. At the hearing Mrs. Coerber admitted receiving this letter. She, in turn, sent it to Mr. Morgan, who, by this time, alone was representing the Coerbers. There followed a telephone conference at which Mr. Morgan reassured Mrs. Coerber that there was nothing to worry about. At about the same time Mr. Wormwood, attorney for the codefendant, Associates Discount Corporation, was attempting to arrange a conference with Mr. Morgan, but to no avail.

On June 16, 1966, the court entered the order compelling the defendants to answer the interrogatories and pay $50 as a reasonable attorney's fee to plaintiffs' attorney. The court noticed the absence of representation of the plaintiffs by this provision in the order:

"The aforementioned award of attorney's fees is subject to the condition that in the event the Court shall be apprised that said defendants failure to answer the Interrogatories was due to the absence of one of their attorneys of record, Martin A. Kane, Esq., then in that event the Court will reconsider this portion of this Order. The said justification will be made within a reasonable time of the date of this Order."

With this rather extensive background we now turn to the law and its application to these facts.

The judgment here was entered pursuant to R.C.P. Colo. 55(b)(2). Under 55(c) provision is made for setting aside such a judgment. It provides that, "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered,

may likewise set it aside in accordance with rule 60(b)."
Rule 60(b) says:

"On motion and upon such terms as are just, the court may relieve a party of his legal representative from a final judgment * * * for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; * * *."

It is true, as previously noted, that motions to vacate default judgments are addressed to the sound discretion of the trial court, but we have never hesitated to overrule a trial court where that discretion has been abused. *Burlington Co. v. Fort Morgan Co.*, 59 Colo. 571, 151 P. 432. Of course, one against whom a default judgment has been entered must allege a meritorious defense to the plaintiff's claim, otherwise there is a failure to show good cause.

In the instant case the defendants had alleged a meritorious defense; the case was at issue before the entry of the default judgment. From the foregoing factual recitation it is clear that defendants' counsel was negligent. That neglect was the primary cause for the defendants' failure to answer the interrogatories. Counsel's neglect was inexcusable but, under the circumstances here, this neglect should not be imputed to the defendants.

A part of the clerk's record is a letter from the trial judge to this court, which, in part, reads:

"Pursuant to the duty imposed upon me by Rule 245 of the Colorado Rules of Civil Procedure, I am herewith submitting a report to the Supreme Court concerning the inaction on the part of Wright J. Morgan, Jr., attorney for the Defendants, Carl Coerber and Charles Coerber, in the case of Edward L. Rath and Juanita J. Rath v. Associates Discount Corporation and Carl Coerber and Charles Coerber, which would appear to this court to be probable cause for discipline of said attorney."

(See: *The People of the State of Colorado ex rel. At-*

*torney General v. Wright J. Morgan, Jr.,* 163 Colo. 527, 431 P.2d 781.)

It is obvious from this letter that although the court recognized the gross neglect of counsel, yet, by its very action, it punished the defendants, whose only dereliction was the misplacing of confidence in their attorney. There is nothing to indicate that setting aside the default and ordering a trial on the merits would unwarrantedly prejudice the plaintiffs, since in their claim against co-defendant Associates Discount Corporation it will be necessary to prove the negligence of the Coerbers and the damages to themselves, just as will be required in the claims against the Coerbers.

Under these circumstances we conclude that the trial court abused its discretion in refusing to set aside the default judgment and reinstate the answer and cross-complaint of the defendants. The rationale of *Zika v. Eckel,* 150 Colo. 302, 372 P.2d 165, is applicable.

The judgment of the trial court is reversed and the cause remanded with directions to reinstate the answer and counterclaim of the defendants; to give the defendants a reasonable time within which to answer the plaintiffs' interrogatories; and to set the matter for trial on the jury calendar.