470 P.2d 49 (1970)
ST. VRAIN DEVELOPMENT COMPANY, a Colorado corporation, Plaintiff in Error,
v.
F. & S. DEVELOPMENT CO., a Colorado corporation, Jack H. Friedman and Edwin B. Fieman, Defendants in Error.
No. 70-007. (Supreme Court No. 22607.)
Colorado Court of Appeals, Div. I.
January 20, 1970.
Rehearing Denied January 29, 1970.
Certiorari Denied May 12, 1970.
*50 John S. Carroll, and Rebecca L. Bradley, Denver, for plaintiff in error.
Sheldon E. Friedman, and Irving I. Oxman, Denver, for defendants in error.
Not Selected for Official Publication.
PIERCE, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and subsequently transferred to the Court of Appeals under authority vested in the Supreme Court.
Plaintiff in error, plaintiff below, and referred to hereinafter as the plaintiff, commenced this action to recover on a promissory notealleging nonpayment of the note and praying for relief in the form of the balance of principal due, interest and attorney's fees, and foreclosure of a mortgage given as security on the note. Although individual defendants, Friedman and Fieman, were named as defendants in the suit with the corporate defendant, the original complaint contained no allegations that they bare individual responsibility on the note. Defendant corporation filed an answer, admitting that it executed the subject note. Concurrently with that answer, the attorney for the corporate defendant filed a motion to dismiss the action as to the individual defendants, Friedman and Fieman, (1) for failure to state a claim against them; (2) to quash for lack of personal service; and (3) for failure to allege that they signed the note in their individual capacities. This motion was accompanied by affidavits signed by both individual defendants, indicating that they were named defendants but that they had never been personally served. Counsel filed this motion on their behalf and indicated their individual addresses on the motion.
The record indicates that the corporate defendant was properly served through its registered agent, but that the individual defendants were never personally served. The trial judge, upon confession by the plaintiff of part (3) of defendants' motion allowed plaintiff to amend as to that part. Thereafter, defendants' attorney voluntarily withdrew his request for relief under parts (1) and (2) of the motion. Plaintiff subsequently filed its amended complaint alleging a claim for relief against both the corporate and individual defendants and served a copy of this complaint *51 on their attorney, by mail, at his office, in accordance with Rules 4(e) (1) and 5(b) (1), R.C.P.Colo. Evidence shows that this copy was received at the attorney's office and entered into his files; but that he filed no answer on behalf of any of the defendants, even though repeatedly requested to do so by counsel for the plaintiff by telephone calls and by letter. Eventually, plaintiff moved for default judgment and properly served notice of the application in accordance with Rule 55(b) (2), R.C.P. Colo. On the day of the hearing on that motion the attorney for the defendants called the court clerk to state that he was detained. However, although the court and opposing counsel waited for his appearance, he did not subsequently attend the hearing, and default was taken against all defendants. Counsel for the defendants apparently did not inform his clients of any of these proceedings.
Thereafter, having found their bank accounts attached, defendants became aware of the default judgment, hired other counsel, and moved to vacate the judgment as to all defendants pursuant to Rule 60(b), R.C.P.Colo., on grounds that the amended complaint failed to state a cause of action; that none of the defendants were informed of the default judgment; and, as to the individual defendants, on the ground that they were never personally served with summons. After full hearing, including testimony by the defendants' original attorney regarding his handling of the case, which we find was a dereliction of duty, the trial judge set aside the default as to the individual defendants, specifically finding that they were never properly served.
Subsequent to the order to vacate, a second amended complaint and answer were filed. In the second amended complaint plaintiff reiterated the existence of the note and alleged that the individual defendants, as well as the corporate defendant, had executed the note, and additionally, that individual defendants had entered into a contract to pay the money. In their answer to this final complaint the corporate defendant admitted liability on the note and the contract, but individual defendants denied involvementexcept in their capacities as corporate officers. In the interim, plaintiff moved for rehearing on the defendants' motion to vacate the default judgment, which was denied.
Upon trial, individual defendants' motion to dismiss as to them, at the end of the plaintiff's case, was granted, and error taken to this Court. Plaintiff assigns error in three respects:
(1) That the trial court erred as a matter of law in vacating the original default judgment;
(2) That the trial court erred as a matter of law in concluding that individual defendants Friedman and Fieman were not personally liable on the note; and
(3) That the trial court erred as a matter of law in concluding that Friedman's alleged oral contract to assume liability on the note fell within the Statute of Frauds and was, therefore, not enforceable.
DID THE TRIAL COURT ERR IN VACATING THE ORIGINAL DEFAULT JUDGMENT?
Whether the plaintiff's default judgment must stand or not depends on three factors:
(1) Did the trial court have jurisdiction over the defendants?
(2) Was the plaintiff's first amended complaint, on which default judgment was taken, properly served?
(3) Should the trial court's order to vacate stand, even though granted for an erroneous reason?
First: With regard to the matter of jurisdiction, the record is clear that the corporate defendant was properly served and jurisdiction over it was good. Therefore, service of the amended complaint on its known attorney by mail was not only good, but was the service required under Rule 5(b) (1), R.C.P.Colo. Failure to answer this amended complaint could, and did, properly result in a default judgment against it. The record is equally clear, however, that at no time were the individual *52 defendants personally served and that, therefore, unless this omission was cured or otherwise waived, the trial court had no jurisdiction over them and the default judgment, as to them, was void. We rule that this jurisdictional defect was waived.
The individual defendants, through the attorney for the corporate defendant, filed a motion to dismiss as to them individually. Their affidavits were attached stating that they had not been personally served and that they were named defendants in the action. The corporate attorney represented himself in the motion to be their attorney, and their addresses were listed as required by Rule 11, R.C.P.Colo.
This motion clearly shows both an attack on the jurisdiction of the court (para. 2) and on the merits of the case (paras. 1 and 3). Plaintiff claims that because the motion incorporates both of these types of attack, it constitutes a "general" as opposed to a "special" appearance and that, therefore, defendants waived any jurisdictional defect by attacking the merits, citing as authority for this proposition Everett v. Wilson, 34 Colo. 476, 83 P. 211 (1905). Although we question the meaningfulness of the distinction between "general" and "special" appearances in light of Treadwell v. District Court, 133 Colo. 520, 297 P.2d 891 (1956), we do not reach that issue because the record clearly shows that subsequent to filing their motion, the individual defendants voluntarily withdrew their demands for relief contained in paragraphs 1 and 2 after plaintiff confessed paragraph 3 of the motion and was granted time to amend its complaint. In short, defendants, by withdrawing their demand for relief in paragraph 2, withdrew their allegation of improper service, leaving only their attack on the merits. Under these conditions the motion of individual defendants to dismiss can only be considered an appearance on the merits, devoid of any jurisdictional issue, and, therefore, a waiver of jurisdictional defect.
This waiver presupposes that the attorney filing the motion on behalf of individual defendants had authority to do so. Trujillo v. Wilson, 117 Colo. 430, 189 P.2d 147 (1948), holds that attorneys are presumed to have authority to appear on their clients' behalf. Although this is a rebuttable presumption, the record before us supports the view that the attorney so acted in this case in that he filed the motion on behalf of both individual defendants, giving the address of each. The motion further states: "COMES NOW THE DEFENDANTS, JACK H. FRIEDMAN and EDWIN B. FIEMAN, defendants above named, and move the Court as follows:". Furthermore, the affidavits signed by Friedman and Fieman accompanying the motion were notarized by, and presumably signed before, a member of the attorney's firm. There is a dearth of evidence in the record to rebut this presumption, and it appears that this issue was only seriously raised for the first time on appeal.
We find that the trial court had proper jurisdiction over both individual defendants in the action by virtue of their motion to dismiss which waived defects of service.
Second: Since the trial court had proper jurisdiction over all defendants, and since all defendants were represented by the same counsel, it follows that the provisions of Rule 5(b) (1), R.C.P. Colo. apply. This rule provides that when service is permitted or required to be made "upon a party represented by an attorney, the service shall be made upon the attorney * * * by mailing it to him * * *." unless otherwise ordered by the court, and that such "service by mail is complete upon mailing." The mandate of this rule is clear: opposing counsel not only may, but must, serve subsequent pleadings on counsel for the adverse party when such has been engaged and is known. There is no evidence anywhere in the record contradicting allegations that the amended complaint was so served; nor is there any indicating that an answer was ever filed *53 to the amended complaint. It is clear, therefore, that all procedural requirements were followed in filing and serving the amended complaint on which default was taken.
Third: The default having properly been taken, was it then proper to vacate the judgment?
Our answer is yes.
Plaintiff argues that the only reason given by the trial court for setting aside the default was that the individual defendants were never properly served with process and that subsequent service of the amended complaint by mail was therefore void. They further argue that since in fact the court erred in this holding because of individual defendants' waiver of this defect by virtue of their appearance on the merits, service of the amended complaint was good, and default judgment should not have been set aside.
We believe that it is debatable whether lack of service was the only ground considered by the court in setting aside the default since the court also stated:
"Briefs have been submitted by counsel for the individual defendants and by the plaintiff, and the court having considered the matter now finds and determines that the judgment entered against Friedman and Fieman is a void judgment and should be vacated and set aside."
The court at the time of its ruling had arguments before it as to the question of service; but in addition thereto, it also had before it considerable argument and facts regarding inexcusable neglect of the defendants' original attorney.
Even if the court may have selected the wrong reason for setting aside the default, we cannot quarrel with the result since Rule 55(c), R.C.P.Colo. allows a default to be set aside for good cause shown.
Rule 60(b), R.C.P.Colo. says:
"On motion and upon such terms as are just, the court may relieve a party * * * from a final judgment * * * for the following reasons (1) mistake, inadvertence, surprise or excusable neglect; * * *."
We can readily see why the individual defendants might have mistakenly believed, after having signed affidavits allowing their original attorney to attempt to dismiss the suit as to them, and then hearing nothing further from him, that the matter had been concluded in their favor. We can also understand their surprise when their bank accounts were attached, in light of never having received notice of default from their own attorney.
The law is established that where a party has not been guilty of negligence a judgment against him may be set aside if obtained through negligence of his counsel, provided he has a good defense on the merits, substantial justice will be done, and can be done without prejudice to the other party. Calkins v. Smalley, 88 Colo. 227, 294 P. 534 (1930); Walker v. Associates, 153 Colo. 261, 385 P.2d 421 (1963); Coerber v. Rath, 164 Colo. 294, 435 P.2d 228 (1967).
We do not consider the facts in the case before us to be as shocking as those in Coerber, supra; but they nevertheless show inexcusable neglect on the part of original counsel for the defendants which would make the principles of Coerber applicable. After obtaining permission to attempt to obtain a dismissal and filing a proper motion, he then voluntarily withdrew his objection to lack of jurisdiction without informing his clients; he did not answer the complaint, again without informing his clients; and after several communications from counsel for plaintiff requesting him to file an answer before the latter took default, he still did not inform his clients or take any action. He was served with proper notice of application for default and did nothing about it other than to inform the court on the date of the hearing that his automobile was out of commission and that he would be delayed. He never did appear; nor did he *54 inform his clients of his failure to appear or of the default which he knew would result.
With these facts in mind, we are persuaded that the trial court was correct in setting aside the default, and find no abuse of discretion in its doing so since it acted well within its powers in making this determination. Burlington Ditch, Reservoir & Land Co. v. Fort Morgan Reservoir & Irrigation Co., 59 Colo. 571, 151 P. 432 (1915). We do not find that the plaintiff was prejudiced by the setting aside of the default, since it subsequently had its day in court on the merits. Finding no error in this matter, we now proceed to plaintiff's second and third assignments of error.
DID THE COURT ERR IN CONCLUDING AS A MATTER OF LAW THAT DEFENDANTS FRIEDMAN AND FIEMAN WERE NOT PERSONALLY LIABLE ON THE NOTE?
The subject note, made on a standard form, is as follows:
"$16,000.00 February 5, 1962
"180 Days (6 mo.) after date, for value received, _______ promise to pay to St.
Vrain Development Company or order the sum of Sixteen Thousand and no/100
Dollars at 541 Main St., Longmont with interest at the rate of 7% per centum
per annum until paid. Interest payable on pay off. And a failure to pay any
of said principal when due shall cause the whole note to become due and collectible
at once or the interest to be counted as principal at the option of the
holder of the note. _______ further agree to pay fifteen per cent as attorney's
fee in case suit is brought on this note, said fee to be taxed up as part of the
cost of suit.
 |Corporate| "F. & S. Development Company
 Jack H. Friedman, Pres.
 | | Edwin B. Fieman, Secretary
"Due August 15, 1962
 "SEE BACK
The significant features of this note are: first, spaces for identification of the maker(s) were left blank; second, the corporate seal of F. & S. Development Co. appears on the left side; and third, the signature block contains in capital letters the name "F. & S. DEVELOPMENT COMPANY" above the written signatures of Friedman and Fieman and their titles.
Under these circumstances it is clear that Friedman and Fieman are not personally liable on the note. This case is virtually identical to that of New England Electric Co. v. Shook, 27 Colo.App. 30, 145 P. 1002 (1915), in which the court held that personal liability of those purporting to sign a note in a corporate capacity will be determined by the intent manifested from a plain reading of the entire note, giving the words used their common and customary meaning; that presence or absence of the words "per" or "by" will not necessarily be determinative of liability; and that titles such as "President" or "Secretary" will not necessarily be considered surplusage and descriptio personae. In Shook, supra, plaintiff's claims were identical to claims in the instant case, and the court found that by using this test the *55 trial court's finding that there was no intent to make Shook and Black personally liable was correct. The same result obtains in the instant case. Evidence, in the form of lack of specific designation of any maker (let alone the individual defendants as makers), the presence of the corporate seal on the note, the form of individual defendant's signatures and presence of their titles as corporate officers thereafter clearly support the trial court's finding that the note was made by Friedman and Fieman in their corporate, not individual, capacities. To the extent that there is any ambiguity in the note, by failure to specifically designate the makers, etc., such must be resolved against plaintiff, who drew up the note. Asmussen v. Post Printing & Publishing Co., 26 Colo. App. 416, 143 P. 396 (1914); Christmas v. Cooley, 158 Colo. 297, 406 P.2d 333 (1965). We find no error in the trial court's conclusions on this issue.
DID THE COURT ERR IN CONCLUDING THAT FRIEDMAN'S ALLEGED ORAL CONTRACT TO ASSUME LIABILITY ON THE NOTE FELL WITHIN THE STATUTE OF FRAUDS AND WAS UNENFORCEABLE?
The record indicates that the trial court apparently found no oral contract on the part of defendants Friedman or Fieman to assume the liabilities of the corporate defendant on the note. We find nothing substantial in the record indicating anything to the contrary. Therefore, plaintiff's contentions with regard to oral contracts and the Statute of Frauds are inapplicable since, on the evidence, there was no oral contract proved.
For the reasons above, we find that the trial court committed no error, and accordingly affirm its judgment.
SILVERSTEIN, C. J., and COYTE, J., concur.